UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREW BADER, | ) | |
|    Plaintiff, | ) | |
| v. | ) | Case No. 4:23-cv-11354-MRG |
| JAMES WATSON AND<br>PHYLIS NIXON BOSOMWORTH, | ) | |
|    Defendants / Third-Party Plaintiffs, | ) | |
| v. | ) | |
| TOWN OF SANDWICH, | ) | |
|    Third-Party Defendant. | ) | |

### ORDER ON MOTION TO LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST THE TOWN OF SANDWICH (ECF NO. 18)

**GUZMAN, J.**

This case presents itself to the Court upon troubled waters. Plaintiff Andrew Bader ("Plaintiff") brings this negligence action against Defendants James Watson ("Watson") and Phylis Nixon Bosomworth ("Bosomworth") after an accident that occurred when Defendants sought to dock their boat while Plaintiff worked at the Town of Sandwich Marina ("the Marina"). Defendants seek leave to file a Third-Party Complaint under Federal Rule of Civil Procedure Rule 9(h) and 14(c) against the Town of Sandwich. For the reasons stated below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff began working for the Town of Sandwich at the Marina in the beginning of Summer 2021. [ECF No. 1-1 ¶ 5; ECF No. 18-1 ¶ 6]. During his employment with the Marina, he received training from the Town of Sandwich that taught him how to handle dock lines from incoming vessels. [ECF No. 18-1 ¶¶ 3, 7]. Eventually, Plaintiff could handle dock lines by himself with the distant supervision of "more experienced dock workers." [Id. ¶ 8]. On August 6, 2021, at around 3:15PM, Watson and Bosomworth approached the Marina in a 1990 Grand Banks 46-foot cruiser owned by Watson named the Castoff (the "Castoff"). [ECF No. 1-1 ¶¶ 6-8; ECF No. 18-1 ¶¶ 9, 11]. Before approaching, Watson "communicated via VHF radio with [the] Marina staff who instructed him to proceed to a particular dock," where Plaintiff would assist with docking. [ECF No. 18-1 ¶ 11]. At this time, Defendants allege that a verbal contract with the Town of Sandwich formed, which impliedly allowed the Castoff to "safely tie up to the dock." [Id. ¶ 10].

As the boat approached the dock, Bosomworth threw a dock line to Plaintiff. [ECF No. 1-1 ¶ 9; ECF No. 18-1 ¶ 13]. Plaintiff alleges that Bosomworth "threw the wrong end" of the dock line (the eye end) and that Plaintiff "instructed . . . Bosomworth [to] provide him with the correct end" (the bitter end) of the dock line.[1] [ECF No. 1-1 ¶¶ 9-10]. Plaintiff also alleges that "Bosomworth neglected to obey [Plaintiff's] instructions and . . . insisted the Castoff be tied off with the [eye] end" while "Watson did nothing to interject." [Id. ¶ 11]. Defendants allege that Plaintiff ignored the training he received from the Town of Sandwich, mainly that "a vessel was required to pass to him the bitter end of the dock line as opposed to its eye," and that Plaintiff

---

[1] Defendants deny that Bosomworth threw the wrong end of the dock line to Plaintiff. See [ECF No. 7 ¶ 9] (denying Paragraph 9 of Plaintiff's Complaint); [ECF No. 1-1 ¶ 9] ("Bosomworth threw the wrong end of the nautical dock-line to [Plaintiff]."). While the current motion does not require an analysis of whether the wrong end of the dock line was thrown to Plaintiff, the parties are advised to address what end of the dock line is the "correct" end to be thrown in their briefings for future dispositive motions, if filed.

"failed to listen to warnings shouted by other Town employee(s) and transient boat owner(s)." [ECF No. 18-1 ¶¶ 7, 14]. Because Plaintiff allegedly understood that Bosomworth "was not going to follow his instructions," he began to tie off the Castoff with the eye end. [ECF No. 1-1 ¶ 13]. As he tied the vessel, the Castoff lurched away from the dock, "causing the dock-line to become taut," entangling Plaintiff's finger. [Id. ¶ 14]. The dock line "amputated a portion of [Plaintiff]'s ring finger" on his right hand. [Id.]. In the aftermath of this accident, Plaintiff underwent two surgeries to repair his ring finger and "faces the possibility of a third surgery." [Id. ¶ 15].

Defendants seek to implead the Town of Sandwich for not providing a dock worker who "utilize[d] proper, safe and/or competent execution of actions to safely secure the dock line" passed to Plaintiff from the Castoff. [ECF No. 18-1 ¶ 15]. In their Proposed Third-Party Complaint, Defendants bring a claim of Contractual Indemnification, as well as claims of Contribution and Indemnification under General Maritime Law against the Town of Sandwich [Id. at 3, 5-6].

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure Rule 14(a) allows a defendant, "acting as third-party plaintiff, [to] implead any non-party 'who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.'" Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999) (quoting Fed. R. Civ. P. 14(a)(1)) (emphasis omitted). The party must, however, "obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). The determination of permission to leave is "left to the informed discretion of the district court." Lehman, 166 F.3d at 393. Typically, the court will grant impleader under 14(a) beyond 14 days on any colorable claims of derivative liability that do not "unduly delay or otherwise prejudice the ongoing proceedings." Id. While the standard is liberal, the court need not grant impleader if the claims

3

asserted in the proposed third-party complaint are futile. S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., No. 12-11663-Gao, 2015 WL 846533, at *18 (D. Mass. Feb. 26, 2015) (citation omitted); see Fed. R. Civ. P. 14 Advisory Committee Notes to 1963 Amendment ("[T]he Court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim."). Third-party complaints are futile if the proposed complaint "fail[s] to state a claim upon which relief could be granted." State Farm Fire & Casualty Co. v. Wangs All. Corp., No. 21-cv-10389-AK, 2022 WL 464232, at *2 (D. Mass. Feb. 15, 2022). The Court will now discuss the claims at hand.

### III.     DISCUSSION

Defendants seek to implead the Town of Sandwich for both express and implied Contractual Indemnification, as well as General Maritime Law Indemnification and Contribution. The Court will first resolve the jurisdictional questions before discussing whether the claims are meritorious for purposes of Rule 14(a).

#### A.     Jurisdiction / Choice of Law

We turn first to the issues of jurisdiction. Defendants removed Plaintiff's negligence action to federal court pursuant to 28 U.S.C. § 1332 through diversity of citizenship.[2] [ECF No. 1]. Plaintiff's original complaint does not invoke admiralty jurisdiction. However, the mere fact that a case originally invoked "diversity of citizenship of the district court does not preclude the application of maritime law." Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir. 1988); Reed & Reed, Inc. v. Weeks Marine, Inc., 335 F. Supp. 2d 110, n.10 (D. Me. 2004) (finding that even when a complaint originally "invokes federal jurisdiction on the basis of diversity of citizenship, selection of diversity jurisdiction, rather than admiralty jurisdiction, does not

---

[2] The amount in controversy of the original action exceeds $75,000. [ECF No. 1 ¶¶ 4, 7].

4

determine what substantive law applies to the case."). If the accident in the original action is a maritime tort, federal maritime law applies. To determine whether maritime jurisdiction applies to a tort, it must satisfy both the "location" and "connection" requirements, as outlined by the Supreme Court. Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997) (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995)). The location or "situs" test determines "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." Grubart, 513 U.S. at 534. The connection or "nexus" test has two parts: first, the Court must assess the "general features of the type of incident involved" and determine whether it has a "potentially disruptive impact on maritime commerce." Id. The second part of the connection test determines whether the "general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (internal quotation marks omitted). Maritime jurisdiction in this tort action will only exist if both the location and connection tests are satisfied.

   1. *Location Test*

Plaintiff suffered the injury to his ring finger when the Castoff's dock line entangled his finger after lurching away from the dock. [ECF No. 1-1 ¶ 14]. While piers and docks are thought to be extensions of land, when a victim is injured on a dock and the injury is caused by a vessel on navigable waters, admiralty law can be sustained. See Torres Vazquez v. Com. Union Ins. Co., 367 F. Supp. 2d 231, 236-37 (D.P.R. 2005) (finding that admiralty jurisdiction could be sustained if the victim was "injured on land or on a pier or dock, and his injury was" caused by the vessel). The pleadings clearly demonstrate that the accident "was caused by a vessel on navigable water." Grubart, 513 U.S. at 534. Thus, the location test is readily satisfied.

### 2. *Connection Test*

In addition to the location test, the connection test has two parts that must be satisfied for maritime law to apply. The first part of the location test requires the Court to describe the incident at an "intermediate level of possible generality." In re Complaint of Chatham, No. 10-10441-GAO, 2011 WL 110351, at *2 (D. Mass. Jan. 13, 2011) (citing Grubart, 513 U.S. at 538). The Court asks, "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." Grubart, 513 U.S. at 539. The Court finds that the general features of this case – the alleged improper securing of a boat causing injury – could potentially have a disruptive impact of maritime commerce.

The case Andreu v. Palmas del Mar Homeowners Ass'n, 311 F. Supp. 3d 456 (D.P.R. 2018) is particularly helpful to the Court in its analysis of the connection test. In Andreu, Plaintiffs commenced an action in Puerto Rico state court for damage to their vessel. 311 F. Supp. 3d at 458-59. Defendants removed the case to federal court on the basis of federal admiralty and maritime law and Plaintiff objected. Id. at 459. In that court's analysis of the connection test, they found that the plaintiff's argument that their claim involved only non-commercial vessels tied to a private dock did not preclude the existence of federal admiralty law. Id. at 461. The court found that "[w]hile it may be the case that the only boats involved in the incident happened to be pleasure boats, '[t]he jurisdictional inquiry does not turn on the actual effects on maritime commerce,'" nor on the particular facts of the incident. Id. (quoting Sisson v. Ruby, 497 U.S. 358, 363 (1990). In finding that the connection test was satisfied, the court noted that the:

> alleged improper securing of nearby boats . . . clearly fit[s] within the category of potential disruption to commercial maritime activity. While most of the boats in the area may have been pleasure crafts, had there been a commercial vessel nearby, the

>possibility that it would have been impacted in such conditions is quite high.

Id. Boats coming loose from their moorings or being improperly secured to the dock fell squarely within the category according to that court. Id.

The potential distraction an incident poses to individuals responsible for assisting in the navigation or securing of boats is another factor the Court may consider in determining the first part of the connection test. In Complaint of Chatham, plaintiff brought claims against the Town's harbormaster for failing to rescue a swimmer in distress. Complaint of Chatham, 2011 WL 110351, at *1. In determining that the connection test was satisfied, the court found that the drowning of an individual at a public beach resulted in the harbormaster being "diverted from his other tasks to come to his aid," and that while attempting to rescue, "any number of issues could have arisen with respect to any boaters who may have needed assistance navigating the harbor at the time." Id. at *2. As a result, the court determined that the incident posed a potential disruption on maritime commerce. Id.

In the accident before us, Plaintiff was unable to properly secure the Castoff as a result of being given the wrong end of the dock line. In the subsequent events, his finger was partially amputated, presumably preventing him from securing other incoming vessels. Additionally, while not raised by the parties, the Court takes judicial notice that the Town of Sandwich Marina has 42 commercial slips available.[3] This creates an additional possibility that an incident of this kind could have a "potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 534.

---

[3] Sandwich Marina, Town of Sandwich Harbormaster, https://sandwichmarina.com/ (last visited Sep. 27, 2024). These facts "can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b)(2); see Mazzarino v. Mass. State Lottery Comm'n, 616 F. Supp. 3d 118, 124 n.4 (D. Mass. 2022); Madison v. Cruz, 393 F. Supp. 3d 135, 137, 137 n.2 (D. Mass. 2019).

In the second part of the connection test, the Court determines "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. at 539. For this determination, the Court weighs "whether a tortfeasor's activity, commercial or non-commercial, on navigable waters is so closely related to activity traditionally subject to admiralty law." Id. In Grubart, the Court determined that "[n]avigation of boats in navigable waters clearly falls within the substantial relationship [and] storing them at a marina on navigable waters is close enough." Id. at 540; Abdelnour v. Bassett Custom Boatworks, Inc., 514 F. Supp. 2d 123, 127 (D. Mass. 2009) (holding that the operation of a boat on navigable waters has a substantial relationship to traditional maritime activity). The alleged tortious act in the original action took place on a vessel in navigable waters. More specifically, the alleged tort took place during the attempted securing of the Castoff at "a marina on navigable waters." Grubart, 513 U.S. at 540. Therefore, the Court finds that activity giving rise to the incident shows a "substantial relationship to traditional maritime activity." Id. at 539.

With the location and connection tests both satisfied, the Court determines that federal maritime law applies to the action at hand. The Town of Sandwich blankly asserts that this case is not a maritime case, and that Massachusetts state law should apply, but they advance no arguments to support their case that the accident was not a maritime tort. [ECF No. 21 at 4]. Their assertion holds no water. As demonstrated, this case involves a maritime tort, and "[f]ederal maritime law applies to maritime torts." Reed & Reed, 335 F. Supp. 2d at 121 (citing Carey, 864 F.2d at 208) ("This case involves a maritime tort; the court should have applied the maritime rule . . ."). Therefore, the Court declines to apply Massachusetts state law.

8

### B.     Indemnification

In their proposed Third-Party complaint, Defendants bring claims for implied and express contractual indemnification[4] as well as a claim for General Maritime Law Indemnification. Since the Court determined supra that federal maritime law applies to this action, it will decline to assess whether Count I (contractual indemnification) is meritorious.

In admiralty law, there are three types of indemnity that a party may assert: (1) express contractual indemnity, (2) indemnity implied from the nature of the relationship between parties, and (3) tort-based indemnity. See Thomas J. Schoenbaum, Admiralty & Maritime Law § 5:16 (6th ed. 2018); Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1, 2 (1st Cir. 1982). The Court will address each of the three types of indemnity to determine if Defendants "state a claim upon which relief could be granted." State Farm Fire & Casualty, 2022 WL 464232, at *2.

#### 1.     *Express*

"An important feature of admiralty contract law is clauses that shift and allocate risks." Schoenbaum, supra, § 5:16. When express contracts are made in maritime, the contracts are construed "like any other contracts: by their terms and consistent with the intent of the parties." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 31 (2004). When there is an "express agreement of indemnity, . . . it [would not be] disputed that it would be enforceable against the indemnitor." Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 132 (1956); Northern Ins. Co. v. Albin Mfg., Inc., No. 06-190-S, 2008 WL 3285852, at *8 (D.R.I. Aug. 8, 2008) ("Under maritime law, indemnification agreements routinely are enforced as long as the controlling clauses 'are expressed clearly in contracts entered into freely by parties of equal bargaining

---

[4] The Court presumes that the Defendants seek to plead contractual indemnification under Massachusetts law.

9

power.'") (quoting La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc., 124 F.3d 10, 19 (1st Cir. 1997)). In this instant case, however, the Third-Party Plaintiffs point to no express contract to begin with, let alone one with indemnification provisions. Therefore, the claim for indemnification under maritime law cannot advance on an express contractual indemnification theory.

### 2.    *Implied From Nature of the Relationship*

A contractual right to indemnification "will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or when there is a generally recognized special relationship between the parties." Araujo, 693 F.2d at 2-3 (citations omitted). When a party seeks to establish an implied contractual right to indemnification, they "must proffer evidence 'establishing a special relationship between the parties.'" Hernandez v. City of Boston, 277 F. Supp. 3d 176, 180 n.2 (D. Mass. 2017) (quoting Araujo, 693 F.2d at 3). Courts routinely hold that mere "vendor-vendee relationship[s] [do] not constitute a special relationship justifying implied contractual indemnity." Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., No. 17-12301-NMG, 2020 WL 9743905, at *4 (D. Mass. Aug. 5, 2020) (citing Coons v. A.F. Chapman Corp., 460 F. Supp. 2d 209, 224 (D. Mass. 2006)).

Third-Party Plaintiffs have failed to "proffer evidence" that demonstrates any special relationship between them and the Town of Sandwich. They have not pointed to any specific conditions that indicate that it was the parties' intent to have the Town indemnify Third-Party Plaintiffs on an implied basis. Absent any pleadings alleging a special relationship, the Court will decline to find an implied right to indemnification.

10

### 3. *Tort-Based*

Tort-based indemnification "is a doctrine that was developed by the courts to allow the total loss to be allocated to one tortfeasor in a joint liability situation where the negligence or fault of one tortfeasor was much greater compared to the fault of the other." Schoenbaum, supra, § 5:16. This form of indemnification is "[d]esigned to shift the whole loss upon the more guilty of the two tort-feasors." Araujo, 693 F.2d at 3 (citing Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d. Cir. 1978)). Typically, this form of indemnification is "available only when the party seeking it was merely passively negligent while the would-be indemnitor was actively at fault." Id. (citing Loose v. Offshore Navigation, Inc., 670 F.2d 493, 499 (5th Cir. 1982)). When a party seeking indemnification is "itself guilty of acts or omissions proximately causing the plaintiff's injury, tort indemnification is inappropriate." Walter & Shuffain, P.C. v. CPA Mut. Ins. Co. of Am. Risk Retention Grp., 660 F. Supp. 2d 116, 126 (D. Mass. 2009) (quoting Araujo, 693 F.2d at 3); Parks v. United States, 784 F.2d 20, 25 (1st Cir. 1986) ("The law of tort indemnity offers no support for the third-party claim because tort indemnity does not apply where the party seeking indemnity was itself guilty of acts or omissions proximately causing the plaintiff's injuries.") (citation omitted).

Indemnification takes effect upon a finding of liability against the would-be indemnitee. Under maritime law, "[t]ort indemnity is . . . limited to cases where a non-negligent or vicariously liable tortfeasor is entitled to indemnity from a person who is guilty of actual fault." Matter of Parry, No. 15-10686-LTS, 2018 WL 7198181, at *7 (D. Mass. Sept. 13, 2018) (quoting Schoenbaum, supra, § 5:16) (collecting cases). In the case at hand, Plaintiff brings only claims of direct negligence against Defendants. Plaintiff does not allege that these Defendants were merely vicariously liable. Therefore, if Plaintiff succeeds in holding Watson and

11

Bosomworth liable, they would not be "non-negligent or vicariously liable tortfeasor[s]" and tort-based indemnity against the Town could not apply. See id.

Since the Court has not found any basis for Third-Party Plaintiffs to seek indemnification from the Town of Sandwich on any of the three theories of indemnity under maritime law, the Court determines that Count III is futile because it "fail[s] to state a claim upon which relief could be granted." State Farm Fire & Casualty, 2022 WL 464232, at *2.

    **C.**    **General Maritime Law Contribution**

In maritime law, a right to contribution exists according to the principle of comparative fault. Schoenbaum, supra, § 5:16; see Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 111-112 (1974). Courts determine "contribution between joint tortfeasors in admiralty . . . in proportion to their relative fault." Mar. Overseas Corp. v. Ne. Petroleum Indus., Inc., 706 F.2d 349, 355 (1st Cir. 1983) (citing United States v. Reliable Transfer Co., 421 U.S. 397 (1975)). Contribution between joint tortfeasors in maritime cases is only proper where neither tortfeasor's liability is limited by statute. Mar. Overseas Corp., 706 F.2d at 355 (citing Cooper, 417 U.S. at 111-112).

The Town of Sandwich argues that the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(a), bars third-party claims seeking indemnification or contribution from an injured longshoreman's employer. [See ECF No. 21 at 6-7]. However, as Third-Party Plaintiffs correctly point out, Plaintiff is not entitled to coverage under the LHWCA because the LHWCA excludes from coverage "individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such a marina[.]" 33 U.S.C. § 902(3)(C). Plaintiff is an employee of the Town of Sandwich marina. [See ECF No. 1-1 ¶ 5].

Since the LHWCA does not apply to Plaintiff, any statutory limitation on liability deriving from it is of no consequence.

The Town of Sandwich also points to the Massachusetts Workers' Compensation Act (MWCA) as a limiting liability statute. [See ECF No. 21 at 6]. In pertinent part, the MWCA states that "[i]f an employee files any claim or accepts payment of compensation on account of personal injury under [the MWCA] . . . such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury." Mass. Gen. Laws. ch. 152 § 23. The record shows that Plaintiff "received Worker's Compensation payments from the Town [of Sandwich] pursuant to Massachusetts law," [ECF No. 21-2 ¶ 5]; therefore, under the MWCA, his acceptance of workers compensation would release his employer, the Town of Sandwich, from of all of Plaintiff's claims arising from his injury. Even if the Court were to consider the possibility of the Town of Sandwich being a joint tortfeasor entitling Third-Party Plaintiff to contribution, the Town of Sandwich's "liability is limited by statute." Mar. Overseas Corp., 706 F.2d at 355. Accordingly, the Court determines that Count II is futile because Third-Party Plaintiffs have not stated "a claim upon which relief could be granted." State Farm Fire & Casualty, 2022 WL 464232, at *2.

## IV. CONCLUSION

Since the Court has determined that all the proposed third-party claims that Defendants have attempted to anchor to the Town of Sandwich are futile, it **DENIES** their motion to leave to file a third-party complaint against the Town of Sandwich.

**SO ORDERED.**

Dated: November 26, 2024

                                         */s/ Margaret R. Guzman*
                                         Margaret R. Guzman
                                         United States District Judge